ANNA D. KNOWLES, Respondent, v. ADELBERT OLDER and
Araminta Older, Appellants.

(220 N. W. 625.)

Opinion filed July 3, 1928. Rehearing denied July 28, 1928.

*W. A. Burke* and *J. C. Adamson,* for appellants.
*Bangs, Hamilton & Bangs,* for respondent.

BURR, J.  The plaintiff brings this action to foreclose a contract for
the sale of real property made with the defendants on the 28th day
of April, 1924.  This contract, omitting formal parts is as follows:
"This agreement made and entered into this 28th day of April, 1924,

by and between Anna D. Knowles of River Falls, Pierce county, Wisconsin, party of the first part and Adelbert Older and Araminta Older his wife parties of the second part, witnesseth:

"That for and in consideration of the sum of one dollar and other good and valuable considerations and the sum of thirteen thousand five hundred dollars ($13,500) to be paid as follows: Not less than seventy-five dollars ($75) per month on the first day of each and every month hereafter commencing on the first day of July, 1924, and continuing until said sum of thirteen thousand five hundred dollars ($13,500) shall be fully paid. All sums unpaid under this contract to bear interest at the rate of six per cent per annum from the first day of July, 1924, said interest computed annually on the first day of July of each and every year and the payments made shall apply first to the payment of interest and then to the payment of principal, it being the distinct understanding by and between the parties hereto that said party of the first part retains title and exclusive right to the possession of said premises and to all rentals therefrom and the right to collect the same, and said payments of rentals less expense of collection payment of insurance premium, taxes, and other expense shall be applied to the payment of the sum due under this contract and it is agreed that if said second party enters into possession of said premises or any part thereof said second party shall hold possession of said premises as tenant of said first party and said second party shall be liable to the first party for rent for the portion of premises so occupied all payments under this contract to be made at Michigan City Bank, Michigan City, North Dakota, or at such other place or places as shall be designated by said first party. Said payments being intended to apply on the purchase price of the following described premises situated in, Nelson county, North Dakota and described as follows to wit: All that portion of lots numbered 23, 24, 25, 26 and 27, block 17 of the townsite of Michigan City lying south of a line beginning at a point fifty-one (51) feet south of the northeast corner of said lot numbered twenty-seven (27) and running thence west across the aforesaid lots to a point thirty and eight hundred seventy-five thousandths (30.875) feet south of the northwest corner of said lot twenty-three (23) block seventeen (17).

"When said payments are fully completed and when said sum of

thirteen thousand five hundred dollars and interest thereon as aforesaid shall have been fully paid the party of the first part agrees to give to the party of the second part a good and sufficient quitclaim deed of said premises, an abstract title being this day delivered to second party for redating and examination.

"In case said party of the second part fails, neglects or refuses to make any of the payments as above set forth, then they shall be deemed to have given up all their right under this contract and all sums paid thereon shall be deemed to have been paid as rental and shall be the absolute property of the party of the first part."

The plaintiff alleges readiness and willingness on her part to furnish the deed specified in the contract but states the defendant "failed and neglected to comply with the terms of their agreement on their part to be kept and performed and have wholly failed to pay the purchase money and interest, provided for in said agreement;" that the defendants collected rents from the tenants and have failed and refused to pay them over to the plaintiff; that they have failed to keep the hotel property in repair and condition and that they are keeping and retaining possession as tenants of the plaintiff. And so the plaintiff asks for a judgment of foreclosure of the contract and that judgment be entered against the defendants and each of them in the sum of $13,500 with interest at the rate of 6 per cent per annum from July 1, 1924; that the contract be cancelled and declared of no further force or effect, together with such other relief as the court may render.

The defendants answer by denying "that the plaintiff is the owner or has any interest whatsoever in and to the real property described in the complaint or in or to the contract referred to" and alleges that the plaintiff has expressly disclaimed ownership and that her husband Warren P. Knowles is owner of the land, and the contract. The defendants then deny that anything is due either to the plaintiff or to her husband on the contract.

They further allege that by means of fraud and false representations as to the building, its condition, state of repair and value, they were induced to turn over to Warren P. Knowles certain real property in Ramsey county, Minnesota, worth and of the value of $11,500 over and above all incumbrances; that the said Warren P. Knowles and his agents represented that this hotel property in Michigan City was

worth and of the value of $25,000, was in A-1 condition and state of repair, whereas in fact they knew it to be worth not to exceed $8,000 and in bad condition; that the defendants relying upon the statements and representations made as to the value of the property had transferred their St. Paul property as part payment for this Michigan City property and so they ask "a decree of this court to the effect that the defendants are the owners of said hotel property clear and free of any claim thereto of this plaintiff," and as against the said Warren P. Knowles, the husband of this plaintiff they allege they are "entitled to a decree adjudging the said Warren P. Knowles to have no interest in said property and that the defendants are entitled to judgment against the said Warren P. Knowles for the sum of $3,500 the value of the defendant's property over and above the value of the said hotel property if the said Warren P. Knowles becomes a party to this action." The plaintiff replies admitting "that Warren P. Knowles is the owner and holder of a mortgage for $10,000 constituting a lien against the property described in said complaint, and admits that Warren P. Knowles has commenced an action to foreclose said mortgage. The plaintiff then denies each and every other allegation of the answer.

This case is the companion case of Knowles v. Tuttle, post, 138, 220 N. W. 623, decided at this term of the court. Both cases were pending in the same court at the same time and by agreement of the parties were tried together so that we have but one record, though two separate judgments were entered. In the companion case—Knowles v. Tuttle, post, 138, 220 N. W. 623, the judgment of the lower court decreeing a foreclosure of this mortgage held by Warren P. Knowles was affirmed, the amount due on the foreclosure being found to be $9,154.64 with interest at 6 per cent per annum payable semi-annually from Nov. 1, 1926, with statutory attorneys' fees and the costs.

There is no dispute between the parties but what the defendants Older entered into the contract for the purchase of this hotel property as hereinbefore set forth. This contract was signed by the plaintiff and the defendants. At the trial of the case two witnesses testified as to the condition and the value of the premises. Other than these two witnesses the only testimony we have is the testimony of the defendants, and of Warren P. Knowles on behalf of himself in the matter of the foreclosure of the mortgage, and as called by defendants for

cross-examination under the statute, and the deposition of the plaintiff. It appears that prior to the trial of these cases the deposition of Warren P. Knowles as a witness in his own behalf in the other case was taken in Wisconsin on October 25, 1927. Such deposition however, was not introduced in evidence. There was an attempt on the part of the defendants to cross-examine Warren P. Knowles under the statute as to certain questions asked him in the deposition and the answers that he had given, but objections to this portion of the examination were sustained. Assuming that the trial court was in error in sustaining these objections we find that the portion of the deposition sought to be introduced refers to the purpose for which a certain deed to the hotel property was taken by the Knowles. The portion of the depostion is as follows:

Q. And the deed was taken in your wife's name solely for the purpose of preventing merger under the laws of North Dakota of fee title or rather of the interest of the mortgagee with the fee title?
A. That is all that occurs to me now.
Q. Your wife was simply acting as your agent in that matter, if you so construe?
A. I presume that is the legal situation that would arise.
Q. She never claimed any interest in the property?
A. No.

As we have determined in the former case there was no merger of the interests given by the mortgage and the deed.

It is clear from the testimony that Anna D. Knowles has no personal interest in this case other than being representative of her husband, Warren P. Knowles. Though we may refer indiscriminately to the plaintiff and to Warren P. Knowles we are referring to the one and same person.

There is no testimony whatever showing any transaction, dealings or conversation by the defendants with Anna D. Knowles. They admit they never talked with her or saw her. There is no evidence whatever of any such transactions between the defendants and Warren P. Knowles until sometime after the execution of the contract involved. The defendants admit that any dealings they had with reference to

the purchase of this hotel were had with one Charles Tuttle and one Frear; and it is the claim of the defendants that this Charles Tuttle and this Frear were the agents of Warren P. Knowles and therefore any statement or representations which these made are chargeable to Warren P. Knowles.

The evidence is silent as to any relationship between Warren P. Knowles and Charles Tuttle or Mr. Frear. Defendants admit that the first dealings regarding the purchase of the hotel property were had with Charles Tuttle who tried to interest them in the purchase of this property. The offer was made to sell them this property on condition that they would transfer this Minnesota property as the payment of $11,500 on the purchase price. When the terms were ready to be reduced to a contract the defendants found that the contract was made with Anna D. Knowles and they accepted the contract, as coming from her. According to the testimony of the defendant Adelbert Older, Charles Tuttle came to him and "wanted to know how I would like to trade for a hotel in Michigan my property." "He asked if you would like to trade. . . . He wanted to know how I would like to trade for a hotel in Michigan. . . . We said we did not know how good it was and what it was like, and he had a photograph of it, and he showed us the photograph. He told us there was a bank there that paid $75 a month rent and a pool room that paid $20 a month and there was some other rooms that could be used for club rooms that would bring $20 a month so we considered it." He further testified that Tuttle "wanted me to come and look at it and I told him we could not go up as we were both sick, we were sick in bed and under a doctor's care. Mr. Frear was a friend of ours and he said 'Would you take Mr. Frear's judgment if he went up and looked at it?' He said he would pay all the expenses and so I told him 'Yes' that I would." He further testified they were to take in his Minnesota property at $11,500. He said further "I did not pay Mr. Frear at all. He was with Mr. Tuttle. He was a friend of mine. He had done business for me, collected some rents and things like that. He did not represent me at the time." The defendant Araminta Older is the wife of the codefendant and she testified to similar statements and gave the answer "yes" to the following question "and some suggestion was made that you folks knew Mr. Frear and had done busi-

ness with him and if he saw this property you would be satisfied with his report." The defendants testified that Mr. Frear came to them and told them the property was in good condition; that it was all right and relying upon these statements they signed the contract. There is nothing herein to show that either Charles Tuttle or Frear were in any way the agents of the Knowles. Charles Tuttle was not the owner of the property. He might have been the agent for the owner or he might have been a real estate dealer and broker or he could have been acting for the Knowles. There is nothing in the evidence to show his relationship to the parties. Without the deposition of Warren P. Knowles we would have nothing to show that there was any relationship between the contract sought to be foreclosed in this action and the mortgage foreclosed in the companion case; and this deposition was not introduced in evidence.

While the defendants testified that their Minnesota property which they call the St. Paul property was to be taken as part payment on the hotel property in Michigan City, in the sum of $11,500, there is nothing in the record to show what interest they had in this St. Paul property. The testimony is silent as to whether they ever had a deed to it—in fact it would appear from the testimony of Adelbert Older that all the interest they had in the St. Paul property was a contract; for in answer to this question propounded by his own counsel "Mr. Older you hold the contract to this property do you?" he answered "Yes." And while he stated that he had made an assignment of these contracts he did not know then who had them. The evidence is silent as to the value of defendants' interest in the St. Paul property, there is nothing in the contract to show how much had been paid and what was due and no testimony as to whether there was a mortgage or other lien against the property. It is not disputed that the plaintiffs failed to make the monthly payments required by the contract. It is their claim the property was not as represented. Nevertheless we find Mrs. Older writing to Warren P. Knowles in October, 1925, as follows:

"In answer to your request will say the hotel is all right. We had a little streak of business this fall but it is slack again now."

It is clear the defendants have failed utterly to show any fraud or misrepresentation on the part of the plaintiff or her husband.

The trial court entered judgment in this case finding the amount

due on the contract to be the sum of $12,654.64. The same court also entered the judgment of foreclosure in the companion case. Hence the defendants are confronted with the two judgments—a judgment in this case cancelling their contract for this property but giving them until June 2, 1928, to redeem therefrom; and a judgment in the companion case decreeing the foreclosure on the mortgage held by Warren P. Knowles. It is true the defendants in this case did not ask for a retention of the property. They ask that the contract be cancelled; that they be given judgment against Warren P. Knowles if he is made a party to the action. He was not made a party to this action, for though the two cases were tried together they were not consolidated.

As stated before without the deposition of Warren P. Knowles we are at a loss to find any relationship between the deed in which Anna D. Knowles appeared and the mortgage held by Warren P. Knowles." In the argument in this court the defendants asked the court to examine this deposition and consider it as part of the case. Plaintiff, while claiming the defendants had furnished no defense, nevertheless stated she was willing the court should read over and consider the deposition, hence we examine the deposition to ascertain what light it throws upon these cases. From this deposition and the companion case we learn that at one time this hotel property was owned by one Dwight Tuttle, the brother of Charles Tuttle. In November, 1923, Dwight Tuttle gave a mortgage on this hotel property to one Ernest McHaffie,—the mortgage foreclosed in the companion case. The deposition shows Warren P. Knowles for several years previous to 1923 had business dealings with Charles Tuttle which business deals he said were unsatisfactory. McHaffie had bought a farm from Charles Tuttle and assigned the mortgage on the Michigan City property as part payment on the farm. Warren P. Knowles had a farm in Wisconsin which was proving to be an elephant on his hands and he desired to get rid of it. This farm had come to him through his dealings with Charles Tuttle. At last Charles Tuttle offered to transfer the McHaffie mortgage for the Wisconsin farm. Knowles was doubtful of the value of the mortgage, particularly as it was on hotel property in North Dakota, and declined to trade the Wisconsin farm for the mortgage unless he could also get a deed to the hotel property as further security so he could have control of the rents, and the income from it. Thus as further security

to this mortgage he received a deed to the hotel property taking this deed in the name of his wife, Anna D. Knowles, in order to prevent a merger of interests. It was represented to him that the Michigan City property was worth a good deal more than the $10,000 mortgage and he testifies that he recognized there was an equity in the hotel property coming to Dwight Tuttle. So he agreed that if the Tuttles sold the Michigan City property his wife would give a contract for deed to any one to whom they sold the property, as all that he was interested in was his mortgage and the amount due thereon. He denies having ever had any interest in the St. Paul property of the defendants and states the equity which defendants had in the St. Paul property, at the time they entered into the contract was valueless, because of mortgages and liens. He further testifies that later Charles Tuttle and this Frear, now deceased, came to him and told him they had sold the property to the defendants and thereupon he had his wife execute the contract sought to be foreclosed in this case. He says all he claims is the amount due on his mortgage. This testimony is not disputed. When we consider this deposition it is clear that neither Charles Tuttle nor Frear were in any way the agents of Knowles. There is nothing to indicate that the St. Paul property came to the Knowleses or that they were interested in it, even if the interest of the defendants therein were shown.

However, this deposition furnishes the clue to the union between the two cases. It is evident there is but one deal, and that the amount due on the mortgage is all of the interest which the plaintiff in this case or the plaintiff in the companion case has in the Michigan City property.

The trial court entered judgment in this case cancelling the contract. Nothing is said in regard to redemption. Under the provisions of § 8122 of the Compiled Laws as amended by chapter 65 of the Session Laws of 1921, a vendee has one year in which to redeem; but the judgment entered in this case fails to take into consideration the judgment entered in the companion case for the foreclosure of the mortgage. In the instant case the amount necessary to redeem is the amount due on the contract, which is found by the trial court to be $12,654.64 with interest from November 1, 1926, at the rate of 6 per cent per annum. In case redemption is made under the sale in the companion

case of Warren P. Knowles v. Older et al., supra, then the amount paid to effect such redemption will be deducted from the amount necessary to redeem under the foreclosure in this case. The remainder of the amount necessary to redeem in this case will. be paid to the plaintiff to be held by her until its disposition is determined between her, Warren P. Knowles, the plaintiff in the companion case, and the aforesaid Tuttles.

This mortgage having been executed in 1923 and the contract entered into in 1924 and the deed to Anna D. Knowles being in effect a mortgage, the defendants would be entitled, under foreclosure of the mortgage, to the possession of the hotel property and the rents and profits therefrom were it not for the provisions of the contract involved in this case. Hence while the Knowleses are entitled to the possession of the hotel property and the rents and profits therefrom because of the agreement in this contract, nevertheless if the defendants herein redeem they are entitled to credit on such redemption to the extent of the net amount of the rents and profits collected by said Knowleses during the period of redemption, and therefore if they pay the amount due on the contract, less the net rents and profits and the amount necessary to redeem from the mortgage, they are entitled to such deed from the plaintiff herein as is required by the contract. As thus modified, the judgment herein is affirmed.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.